UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

J&J SPORTS PRODUCTIONS, INC.                    CIVIL ACTION

v.                                              NO. 14-1326

GIUSEPPE'S BISTRO, LLC, ET AL.                  SECTION "F"


ORDER AND REASONS

Before the Court is the defendants' motion for summary judgment. For the reasons that follow, the motion is DENIED in part and GRANTED in part.

Background

This is a television piracy case. J&J Sports Productions, Inc., is a distributor of closed circuit pay-per-view boxing and special events. Giuseppe's Bistro, LLC, of which Mr. Jalice is the sole member, owns Down the Hatch Bar & Grill. J&J alleges that on June 9, 2012, J&J's private investigator saw a pay-per-view fight (Manny Pacquiao v. Timothy Bradley, WBO Welterweight Championship Fight Program), to which J&J had the exclusive rights, being shown at Down the Hatch Bar & Grill without payment to J&J. J&J contends that a post on the bar's Facebook page the day before advertised that the fight would be shown the following night.[1]

---

[1] The plaintiff submitted as an exhibit a very faint screenshot of a Facebook page belonging to Down the Hatch - Nola, accessed January 29, 2013. It appears to show a picture of the two

J&J filed suit because of this allegedly impermissible showing of its programming. It brings claims against the LLC and Mr. Jalice under: (1) 47 U.S.C. § 605(a), which prohibits interception and publishing radio communication; (2) the Wiretap Act, 18 U.S.C. § 2511, which prohibits intentional interception of any wire, oral, or electronic communication, in conjunction with § 2520, which creates a private right of action; and (3) 47 U.S.C. § 553, which prohibits interception or reception of any communications service offered over a cable system. J&J further alleges that the defendants willfully and intentionally intercepted the program and did so for the purpose of commercial advantage or private financial gain, warranting enhanced statutory damages. The defendants now move for summary judgment.[2]

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to

---

fighters and the name of the event: Pacquiao vs. Bradley. It reads, "Come out tomorrow night for the Pacquiao vs. Bradley fight! Boxing on our projection screen! $1 PBR and $2 Wells all day!" It includes the address of the bar. The date of the posting cannot be made out because of the exhibit's poor quality.

[2] The plaintiff contends that the motion should be denied because it was not afforded seven days to respond, as required by the Local Rules. The defendants first filed the motion for summary judgment on March 23, the day before it needed to be filed for an April 8 hearing date. The motion-which contained all the relevant legal arguments-was marked deficient because it was formatted improperly. It was re-filed correctly on March 27. Absent a motion to strike the motion for summary judgment, the Court will not indulge the plaintiff's timeliness argument.

any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir.

1987); FED. R. CIV. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.

*A. Claims under Sections 553 and 605*

The Federal Cable Communications Policy Act, 47 U.S.C. § 553, prohibits the unauthorized receipt or interception of communications offered over a cable system. Section 553 creates a civil cause of action for an aggrieved party and permits the plaintiff to choose between actual and statutory damages. 47 U.S.C. § 553(c)(3)(A). Under § 553(c)(3)(A)(ii), the "party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." Additionally, under § 553(c)(3)(B), "[i]n any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000." Finally, under § 553(c)(3)(C), "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100."

4

J&J brings claims against the defendants under §§ 553 and 605. "A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception." J&J Sports Prods., Inc. v. Manzano, No. 08-01872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008). See also KingsVision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 441-42 (S.D.N.Y. 2001); Time Warner Cable of N.Y.C. v. Barbosa, No. 98-3522, 2001 WL 118608, at *5 (S.D.N.Y. Jan. 2, 2001); Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp., No. 88-2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991). The evidence shows that Down the Hatch uses only cable service. Accordingly, the relevant statute is § 553. Because there is no substantiated allegation that the defendants used a satellite signal to intercept the program, § 605 is inapplicable.

*B. Liability of Mr. Jalice*

The defendants contend that the plaintiff must prove three elements under § 553: (1) the defendant had control over the television at the time of the alleged signal piracy; (2) the defendant authorized the violation; and (3) the defendant derived a benefit from the alleged signal piracy.[3] They argue that the

---

[3] The three elements that the defendants seek to apply to the claims against them are not found in the statute, of course, but rather in district court case law. See, e.g., Joe Hand Promotions, Inc. v. Alvarado, No. 10-0907, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011) (employing the defendants' three elements in granting

5

plaintiff cannot prove these elements, at least as to Jalice, because there is no evidence that he was even at the bar on the night the fight was shown.

Even if the bar is liable for the broadcast, Jalice contends that, as the LLC's sole member, he is not liable for the LLC's tort absent evidence of his own wrongdoing. The plaintiff counters that the specific case law under § 553, not general concepts of LLC law, govern the question of Jalice's liability. Relying on Broadcast Music, Inc. v. Meadowlake, Ltd., 754 F.3d 353 (6th Cir. 2014), J&J contends that, like in the case of copyright infringement, a person who has the right or the power to prevent the commission of a § 553 violation and an "obvious and direct financial interest in the infringement" is liable for the infringement, even if he did not participate in the act.

Upon reviewing potentially persuasive cases to determine personal liability, this Court finds itself instead in a sea of

---

an unopposed motion for summary judgment in favor of two individuals who no longer owned a bar on the date when a pay-per-view fight was allegedly impermissibly shown at the bar). The Court finds no persuasive reason to apply this test, which fit logically a fact pattern in which ownership of the bar was at issue, but which is not employed in other district court cases.
 The defendants contend that these elements find their genesis in J&J Sports Prods, Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469 (E.D.N.Y. 2009). That case, however, did not rely on the three-part test requiring control over the television at the time of the violation, but, rather, on the two-part test derived from copyright case law: "[T]he complaint must establish that the individual had a right and ability to supervise the violations, as well as an obvious and direct financial interest in the misconduct." Id. at 473.

conflicting district court case law. Several district court cases employ general principles of corporate or LLC law to determine the personal liability of an establishment's owners, and several others use a copyright-law-based standard. Compare Joe Hand Promotions, Inc. v. Breaktime Bar, LLC, No. 12-2618, 2014 WL 1870633, at *2 (W.D. La. May 8, 2014) (finding that the LLC form shielded the bar's owner from liability absent evidence of individual wrongdoing, with no mention of his ability to supervise) with J&J Sports Prods., Inc. v. J&J Keynote Lounge, Inc., No. 11-15002, 2013 WL 1747803, at *9 (E.D. Mich. Apr. 23, 2013) ("[I]n order to hold a corporation's shareholders liable under § 605(a) of the Communication Act,[4] the Plaintiff is required to prove that a defendant shareholder had a right and ability to supervise the violations, and that he or she had strong financial interests in such activities.").

The Court also finds no guidance from the United States Court of Appeals for the Fifth Circuit on the question of vicarious liability. A total of four Fifth Circuit cases, ranging from 1997 to 2014, even mention 47 U.S.C. § 553. The defendants cite only

---

[4] Courts often employ the same liability standards to both § 553 and § 605. See, e.g., J&J Sports Prods., Inc. v. Flores, 913 F. Supp. 2d 950, 963 (E.D. Cal. 2012) ("The Court further finds the same standards enunciated above for vicarious and contributory liability under section 605 apply equally to section 553. Consistent with its analysis of Defendants' vicarious and contributory liability under section 605, the Court finds no triable issue of material fact as to Defendants' vicarious or contributory liability under section 553.").

one:[5]   J&J Sports Prods., Inc., v. Mandell Family Ventures, LLC, 751 F.3d 346, 352-53 (5th Cir. 2014), for the proposition that §§ 553 and 605 are mutually exclusive.  In Mandell, the Fifth Circuit reversed the district court's grant of summary judgment in favor of J&J on its claims under §§ 553 and 605.  First, the court found that a safe harbor under § 553 may have applied to the defendants.  The defendants contended that their actions were authorized by their cable operator, and § 553 precludes the imposition of liability on customers of cable providers.  The court then considered whether § 605 applied to the defendants' receipt of cable services and found that the statute's plain language compelled the conclusion that § 605 does not encompass the receipt or interception of communications by wire from a cable system.  Thus, Mandell offers this Court no guidance as to the liability of the defendants here.

The other Fifth Circuit cases similarly provide no answers.  In Joe Hand Promotions, Inc. v. Chios, Inc., 554 F. App'x 444 (5th Cir. 2013) (per curium), the Fifth Circuit held that in the bench trial below, the district court could draw an adverse inference from the owners' failure to testify after the introduction of a stipulated affidavit of a private investigator, and the district court's failure to deny *sua sponte* a motion for judicial notice was

---

[5] The defendants cite another case as a Fifth Circuit decision, but it is, in fact, from the Sixth Circuit.

not plain error.  The Fifth Circuit did not have the occasion to examine the contours of liability under § 553.  In <u>Prostar v. Massachi</u>, 239 F.3d 669 (5th Cir. 2001) (per curium), the Fifth Circuit examined only the appropriate statute of limitations for an action brought under §§ 553 and 605.  Finally, <u>Chair King, Inc. v. Houston Cellular Corp.</u>, 131 F.3d 507 (5th Cir. 1997), concerned only a question of subject matter jurisdiction in Telephone Consumer Protection Act cases, and, in any event, was subsequently abrogated by the United States Supreme Court.  <u>Mims v. Arrow Fin. Servs., LLC</u>, 132 S.Ct. 740 (2012).

    Thus, the Court is left with only one source of binding authority: 47 U.S.C. § 553 itself.  The statute states that "no person" shall commit TV piracy, and "any person" who does shall be fined or imprisoned or subject to civil liability.  It seems reasonable that in the absence of a contrary directive from Congress, the usual limited liability of an LLC's member would apply.  But, on this record, where the defendants do not acknowledge the conflicting case law and neither side adequately articulates why either standard is preferable, this Court cannot find that the defendant Jalice has carried his burden as to justify a ruling in his favor as a matter of law.  This Court finds no authority to support the application of the seldom-used, three-

element formula that the defendants contend controls their case,[6] and so it is left with the district court split explained *infra*. The issue of personal liability is left for the parties to brief in anticipation of trial.

*C. Liability of Giuseppe's Bistro, LLC d/b/a Down the Hatch Bar & Grill*

The question of direct liability is much more simple. The defendants advance the following arguments: (1) there is no evidence that the company authorized a signal piracy, controlled the TVs, nor benefitted from any piracy (again employing the three elements discussed *infra*); (2) there is no evidence whether the alleged interception in this case was of a satellite or cable signal; and (3) there was no signal interception. The Court finds these arguments unpersuasive. The first, which relies on the Court adopting the defendants' elements argument, is rejected for the reasons already discussed.[7]

The defendants contend that summary judgment should be granted

---

[6] Again, those three elements are that: (1) the defendant had control over the television at the time of the alleged signal piracy; (2) the defendant authorized the violation; and (3) the defendant derived a benefit from the alleged signal piracy.

[7] The statute merely states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Nowhere does this strict liability statute base liability on authorization, control, or benefit. If it should, it is up to Congress, not this Court.

in their favor because there is no evidence whether the alleged interception in this case was of a satellite or cable signal.  In support, they cite cases that denied summary judgment in favor of the *plaintiff* for failure to establish which type of signal was intercepted.  See, e.g., J&J Sports Prods., Inc. v. Evolution Entm't Grp., LLC, No. 13-5178, 2014 WL 3587370 (E.D. La. July 21, 2014).  On summary judgment, the Court must read the facts in the light most favorable to the non-moving party.  In so doing, this Court finds that there is sufficient evidence to defeat summary judgment.  The defendants state in their response to the plaintiff's interrogatories that the only TV service at the premises is cable, and the private investigator swore that the fight was shown on the bar's several televisions.

Finally, the defendants contend that there was no signal interception, and thus they are not liable.  They rely heavily on Premium Sports Inc. v. Connell, No. 10-3753, 2012 WL 691891 (S.D.N.Y. Mar. 1, 2012), where the court found that the defendants were not liable under § 605 for exhibiting a program that they did not illegally intercept.  That case based its holding on Cablevision of Mich., Inc. v. Sports Palace, No. 93-1737, 1994 WL 245584 (6th Cir. June 6, 1994), a decision whose logic the Sixth Circuit later debunked.  See Nat'l Satellite Sports, Inc. v.

Eliadis, Inc., 253 F.3d 900, 915-16 (6th Cir. 2001).[8] In accordance with the Sixth Circuit's analysis in Nat'l Satellite Sports, this Court does not find Premium Sports or Cablevision persuasive. At the very least, the plaintiff has provided sufficient evidence to show that the defendant bar received or assisted in receiving a communications service offered over a cable system. See 47 U.S.C. § 553(a)(1). The plaintiff has provided the sworn declaration of its private investigator who witnessed the fight's broadcast at the bar, as well as the advertisement for the fight posted on the bar's Facebook page the day before.

D. *Enhanced Statutory Damages*

In the alternative, the defendants move for partial summary judgment as to enhanced statutory damages. Section 553(c)(3)

---

[8] The court explained:

> Time Warner's citation to Cablevision is unavailing. In Cablevision, a distributor with exclusive rights to broadcast a boxing match to commercial establishments sued a sports bar under § 605 that had improperly obtained the boxing match from a residential pay-per-view service. Cablevision cited Smith for the proposition that when "there [is] no interception, the mere fact that the bar divulged or published [a similar boxing match] cannot make it liable under Section 605(a)." For the reasons previously discussed, however, this proposition is not a correct statement of the law. Smith's holding is limited to an interpretation of the second sentence of § 605(a), not the entire provision. As a result, Cablevision's reliance on the broad dicta from Smith is misplaced. Because Cablevision is an unpublished decision, we are not bound by its holding.

(citations omitted).

contains the following damages provisions:

> (A) Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:
>
>> (i) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>>
>> (ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.
>
> (B) In any case in which the court finds that the violation was committed <u>willfully and for purposes of commercial advantage or private financial gain</u>, the court in its discretion <u>may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.</u>
>
> (C) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.

(emphasis added). The defendants contend that there is no evidence that they committed a willful violation for the purpose of commercial advantage or private financial gain. The bar did not charge a cover on the night the fight was shown, the volume was not on the TVs, the bar's capacity is only 43 people, Jalice did not advertise the event, and the bar and its owner are not repeat

offenders. Although the plaintiff does seek enhanced damages in its complaint, in its opposition to the motion for summary judgment, the plaintiff does not offer any argument that enhanced damages are warranted. Neither side directs the Court to any case law on the issue of enhanced damages, though examples are plentiful.

In deciding whether enhanced statutory damages are warranted, courts consider such factors as the number of televisions on which the defendants broadcast the program, the food and beverages sold to customers, whether there was a cover charge, and whether it was broadcast in an urban area where the broadcast would have had more than a minimal impact. See, e.g., Time Warner Cable of N.Y.C. v. Taco Rápido Rest., 988 F. Supp. 107, 111-12 (E.D.N.Y. 1997) (showing Event on multiple televisions is evidence of commercial advantage, and "defendant's display of the Event most likely led to an increased number of patrons, and thus to an increase in profits from food and beverages."); Joe Hand Promotions, Inc. v. Chios, Inc., No. 11-2411, 2012 WL 3069935, at *6 (S.D. Tex. July 27, 2012), aff'd, 544 F. App'x 444 (5th Cir. 2013), citing KingVision Pay-Per-View Ltd. v. Hay Caramba Mexican Rest., No. H-02-1311 (S.D. Tex. Mar. 10, 2003) ("It is the Court's view that the defendant profited even if it did not charge a cover by selling food and beverages to the patrons who expected and did view the broadcast."); Joe Hand Promotions, Inc. v. Carranza, No. 09-0984,

14

2009 WL 4254460, at *3 (E.D. Cal. Nov. 23, 2009) (finding that the exhibition had more than a minimal impact where it was shown at an establishment with a capacity of 250 persons in Modesto, California, a city of more than 200,000).

Here, the private investigator states that he saw the fight on ten televisions or monitors and counted 80 people inside the establishment, despite its capacity of 43. Though the volume was off and there was no cover charge for the evening, the bar's Facebook page promoted the fight along with its drink specials that night. The bar is located in a popular area of New Orleans. Thus, the defendants have not persuaded the Court, on this record, that any alleged violation in this case could not warrant the imposition of enhanced statutory damages.

*E. Liability under the Criminal Wiretap Statute*

Together, 18 U.S.C. §§ 2511 (the criminal wiretap statute) and 2520 provide a private cause of action for the intentional interception of electronic communications, including both satellite and cable transmissions. See 18 U.S.C. §§ 2511(1)(a) and 2520(a)[9];

---

[9] Section 2511(1)(a) imposes criminal liability upon any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." A civil action is provided in § 2520(a): "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008). Proof of a violation of § 2511(1)(a) entails proof of an intentional, illegal interception. See DirecTV, Inc. v. Robson, 420 F.3d 532, 537 (5th Cir. 2006).

The defendants contend, without citing authority, that § 2511 does not apply to an alleged unauthorized exhibition unless there is evidence of the use of a pirate access device. This is the extent of their argument.[10] Although it is true that many § 2511 cases involve pirate access devices, see, e.g., DirecTV, Inc. v. Griepsma, No. 03-6243, 2005 WL 608250 (W.D.N.Y. Mar. 11, 2005), this Court is not aware of any binding authority articulating the need for evidence of such a device. Thus, the Court finds that the defendants have not carried their burden as to justify a ruling in their favor as a matter of law.

---

[10] The defendants devote two short paragraphs to their § 2511 argument, relying only on the absence of evidence of the use of a pirate access device. On this record, the Court cannot find that they have carried their burden. See Joe Hand Promotions, Inc. v. Breaktime Bar, LLC, No. 12-2618, 2014 WL 1870633, at *3 (W.D. La. May 8, 2014) ("Breaktime's memorandum in support of its motion contains two brief paragraphs of argument on this point. The court finds the defendant has not carried its burden of proof with respect to this argument.").

Accordingly, because the defendants have failed in large part to carry their burden on summary judgment, IT IS ORDERED that their motion is hereby DENIED as to the § 553 and § 2511 claims.  It is GRANTED as to the § 605 claim.

New Orleans, Louisiana, April 6, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE